IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARITRANS OPERATING COMPANY L.P. | : | CIVIL ACTION |
| | : | |
| v. | : | IN ADMIRALTY |
| | : | |
| CHRIS-MARINE USA, INC. | : | No. 02-CV-4429 |

**JOINT CASE REPORT**

Maritrans Operating Company L.P. ("Maritrans") and Chris-Marine USA, Inc. ("Chris-Marine"), respectfully submit the following Joint Case Report.

**A.     Statement of Facts**

Maritrans Operating Company L.P. is the bareboat charterer/operator of the TUG CONSTITUTION, a U.S. flag vessel. Maritrans General Partner Inc. is the managing general partner of Maritrans Operating Company L.P.[1]

The CONSTITUTION provides the motive power for the tank barge MARITRANS 400, which engages in lightering[2] and carries crude oil in the Delaware Bay. In December of 2000, Maritrans engaged Chris-Marine to support and re-align the engine of the CONSTITUTION. This requires the foundation of the engine to be properly supported, and the engine itself to be properly aligned with the tailshaft. The work was to be performed during a scheduled maintenance period.

---

[1] At the time of the incidents giving rise to this action, the CONSTITUTION was owned by Maritrans Operating Partners L.P. In a subsequent reorganization, Maritrans Operating Partners L.P. was converted to corporate form as Maritrans Transportation Inc., and Maritrans Transportation Inc. subsequently contributed all rights and liabilities of Maritrans Operating Partners L.P., except vessel ownership, to a newly formed subsidiary, Maritrans Operating Company L.P., plaintiff herein.

[2] "Lightering" is the process where deeply laden oil tankers are partially off-loaded to reduce their draft and permit the tankers to proceed in a shallow channel with the remaining cargo on board.

PBH: 160076.1

Chris-Marine attempted to perform the services. Maritrans contends that Chris-Marine failed to properly support or re-align the engine. Chris-Marine contends that the services were properly performed. Despite Maritrans' belief that the repairs were not done, CONSTITUTION was forced to get underway because of contractual commitments.

Maritrans continued to closely monitor the engine. Maritrans contends that the support and alignment of the engine continued to deteriorate until, in March of 2002, Maritrans was advised by the engine manufacturer that failure to remove the tug from service to undergo correct repairs would cause irreparable harm to the engine. Maritrans again removed the vessel from service, and hired a substitute tug/barge unit to meet the contractual commitments of CONSTITUTION/MARITRANS 400. Another contractor was hired to support and align the engine. The work was performed to manufacturer specifications, and the vessel has continued to operate since that time with no further deterioration.

Maritrans contends that, as a result of Chris-Marine's failure to perform its contract, Maritrans incurred damages in excess of $800,000.

Chris-Marine has counterclaimed, asserting that it performed the contracted services, and that it is owed $66,688.64 for such services, which Maritrans has not paid.

    **B.**    **Statement of all Causes of Action, the elements of each cause of action, and the relief sought**

<u>Maritrans' Claims</u>

Maritrans seeks damages in the amount of $813,969.78, plus prejudgment interest, for breach of contract and breach of its warranty of workmanlike performance.

(1) Breach of Contract: Maritrans must establish that a contract existed, that Chris-Marine failed to perform the contracted services, and that Maritrans incurred damages.

Prejudgment interest is awarded as of right in admiralty actions.

(2) Breach of Warranty. There is in every admiralty contract an implied warranty of workmanlike service. Maritrans must establish the existence of the contract, that the services performed by the contractor were not performed in a workmanlike manner, and that Maritrans incurred damages. Prejudgment interest is awarded as of right in admiralty actions.

Chris-Marine's Defenses

Chris-Marine contends that it performed the specified services in a workmanlike manner, and the problems alleged by Maritrans resulted solely from defects in the vessel's structure and equipment. Chris-Marine also contends that the services were contracted subject to Chris-Marine's Terms and Provisions which, among other things, require disputes to be litigated in the State of Florida, exclude implied and express warranties, exclude claims for consequential damages, and limit any liability of Chris-Marine (liability being denied) to repairs or replacements with a maximum limit of $50,000.

**C.     Statement of Defenses asserted and elements of each defense**

Chris-Marine's Claims:

Chris-Marine contends that it performed the services requested in a workmanlike manner, and that Maritrans breached its contract by failing to pay for such services. Chris-Marine seeks damages in the amount of $66,688.64, plus prejudgment interest.

Maritrans' Defenses

Maritrans contends that Chris-Marine failed to perform the services for which it contracted and that, therefore, no money is owed.

**D.     Whether the Parties have complied with the disclosure requirements of Fed.R.Civ.P.26(a)(1), and if not, the date on which such disclosures will be completed**

Maritrans served its disclosures on April 7, 2003. Chris-Marine served its disclosures on May 30, 2003.

E.  **The date by which the Parties anticipate all discovery to be completed**

The Parties request 120 days to complete fact discovery, with an additional 45 days for exchange of expert reports.

F.  **Whether all necessary parties have been properly joined, and if not, the name of any such party and each Party's respective position of why such party is or is not necessary to the action:**

Maritrans will require initial discovery to ascertain whether all necessary parties have been joined.

G.  **Whether settlement negotiations have taken place and each Party's respective position on settlement:**

As this matter is a non-jury admiralty claim under Rule 9(h) of the Federal Rules of Civil Procedure, the Parties do not address settlement issues herein.

H.  **A list of all counsel who will be attending the Scheduling Conference, identifying the party whom each attorney represents:**

For Plaintiff:

> Arthur J. Volkle, Jr. (Pa. Bar 67808)
> Vice President & Legal Counsel
> Maritrans Operating Company L.P.
> Two Harbour Place
> 302 Knights Run Ave.
> Tampa, FL 33602
> Tel: (813) 209-0667
> Fax: (813) 221-2648

    For Defendant:

        Stephen M. Calder (Attorney I.D. 25894)
        Palmer, Biezup & Henerson
        Public Ledger Building
        620 Chestnut Street, Suite 956
        Philadelphia, PA 19106
        Tel: (215) 625-9900
        Fax: (215) 625-0185

Respectfully submitted:

| | |
|---|---|
| ARTHUR J. VOLKLE, JR. (Pa. Bar 67808) | STEPHEN M. CALDER (Pa Bar 25894) |
| Vice President & Legal Counsel | Palmer, Biezup & Henderson |
| Maritrans Operating Company L.P. | Public Ledger Building |
| Two Harbour Place | 620 Chestnut Street, Suite 956 |
| 302 Knights Run Ave. | Philadelphia, PA 19106 |
| Tampa, FL 33602 | Tel: (215) 625-9900 |
| Tel:  (813) 209-0667 | Fax: (215) 625-0185 |
| Fax:  (813) 221-2648 | |

JEFFREY S. MOLLER (Pa Bar 41049)
Blank Rome Comisky & McCauley
Four Penn Center Plaza
Philadelphia, PA 19103-2599
Tel: (215) 569-5792
Fax: (215) 832-5792

Attorneys for Plaintiff                                                           Attorneys for Defendant

Dated:  May 30, 2003